58 P.3d 317 (2002)
114 Wash.App. 495
In re MARRIAGE OF HORNER,
Lynn I. Horner, Appellant,
v.
Joseph R. Horner, Respondent.
No. 27343-8-II.
Court of Appeals of Washington, Division 2.
November 26, 2002.
Tonya Kowalski, Portland, OR, for Appellant.
Elizabeth Feulner, Suzan L. Clark, Vancouver, WA, for Respondent.
MORGAN, J.
Lynn Horner appeals an order prohibiting her from relocating one of the parties' minor children. We affirm.
In In re Marriage of Littlefield,[1] the Washington Supreme Court held that even though a trial court has authority to find that the "primary residential parent's relocation would harm the child[,]" it may bar relocation only if the consequent harm would exceed *318 "the normal distress suffered by a child because of travel, infrequent contact of a parent, or other hardships which predictably result from a dissolution of marriage."[2] In In re Marriage of Pape,[3] the Washington Supreme Court held that the "presumption" in a relocation action "is in favor of `custodial' continuity, not environmental stability or environmental continuity"; and further, that "[i]t is only where the nonprimary residential parent overcomes that presumption by showing continued placement with the other parent is not in the child's best interest that the principal residence of the child may be changed."[4]
Effective June 8, 2000, the Washington legislature enacted Washington's Child Relocation Act. Codified as RCW 26.09.405-.560, the Act was explicitly designed to supersede In re Littlefield and In re Pape.[5] It applies to any order "regarding residential time or visitation with a child" issued after June 8, 2000.[6]
The Act declares that "the court has the authority to allow or not allow a person to relocate the child."[7] A party who proposes to relocate must notify "every other person entitled to residential time or visitation with the child[.]"[8] If any such person desires to object, he or she "shall do so by filing the objection with the court and serving the objection on the relocating party[.]"[9] Moreover, he or she shall do so within thirty days or "the relocation of the child shall be permitted."[10]
The Act creates a "rebuttable presumption that the intended relocation of the child will be permitted."[11] To rebut this presumption, an objecting party must demonstrate "that the detrimental effect of the relocation outweighs the benefit of the change to the child and the relocating person,"[12] based on the following non-weighted factors:
(1) The relative strength, nature, quality, extent of involvement, and stability of the child's relationship with each parent, siblings, and other significant persons in the child's life;
(2) Prior agreements of the parties;
(3) Whether disrupting the contact between the child and the person with whom the child resides a majority of the time would be more detrimental to the child than disrupting contact between the child and the person objecting to the relocation;
(4) Whether either parent or a person entitled to residential time with the child is subject to limitations under RCW 26.09.191;
(5) The reasons of each person for seeking or opposing the relocation and the good faith of each of the parties in requesting or opposing the relocation;
(6) The age, developmental stage, and needs of the child, and the likely impact the relocation or its prevention will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child;
(7) The quality of life, resources, and opportunities available to the child and to the relocating party in the current and proposed geographic locations;
(8) The availability of alternative arrangements to foster and continue the child's relationship with and access to the other parent;
(9) The alternatives to relocation and whether it is feasible and desirable for the other party to relocate also;
(10) The financial impact and logistics of the relocation or its prevention; and

*319 (11) For a temporary order, the amount of time before a final decision can be made at trial.[[13]]
If the objecting party so demonstrates, the court may prohibit the relocation.[14]
With this background, we turn to the facts here. Lynn and Joseph Horner married in 1977. Their son Kyle was born in 1984 and their daughter Natalie in 1995. Joseph also has an older daughter from a previous marriage.
Lynn and Joseph separated in 1999. Lynn petitioned for dissolution, Joseph answered, and they went to trial in October 2000. On December 13, 2000, the court granted a decree.
Before and during the dissolution proceedings, Lynn and Joseph lived in Vancouver, Washington. Their parenting plan provided that Natalie would reside with Lynn, except that she would reside with Joseph on alternating weekends. Kyle would reside with Joseph, except that he would reside with Lynn on alternating weekends. The children would be together each weekend and for mid-week evening visits.
On January 22, 2001, less than six weeks after the decree, Lynn notified Joseph that she intended to relocate Natalie to Edmonds, Washington. Lynn stated that her parents needed assistance due to recent health problems; that she and Natalie would live in her parents' home; that she had "found ... a neighborhood elementary school and a ... child care facility which can accommodate Natalie"; and that she had "many job opportunities" in the King County area.[15]
On February 1, 2001, Joseph filed his written objection to the proposed relocation. He asserted that an order allowing the proposed move "would be contrary to ... Natalie's best interests"[16] because it would subject her "to an extra-ordinary amount of time riding in a car as well as missed contacts with [him] due to weather and other circumstances beyond our control."[17] He asserted that an order denying the proposed move would "maintain continuity of Natalie's most significant relationships[,]"[18] including those with him, her brother, half-sister, other family members, and "long-term familiar" friends.[19] He asserted that the one-way trip between Vancouver and Edmonds would take four hours; that taking such a trip every other weekend would not "provide a healthy, stable, quality of life for the children[;]"[20] and that the "the children's lives, resources, and opportunities ... will be better if the court were to deny the relocation."[21] He asserted that Lynn's stated reason for the move was not genuine.
On February 7, 2001, Lynn filed a written reply. She stated that Joseph's objection was unfounded, and that his only reason for making it was that "he will have to ... drive every other weekend an hour and a half to pick up Natalie and an hour and a half to return her."[22]
At a hearing on February 12, 2001, the court considered the parties' written documents and oral arguments. Two days later, on February 14, 2001, it found in writing that the "detrimental effects of the relocation outweigh the benefit of the change to the child and Petitioner"[23] and that Joseph "has rebutted the presumption that the relocation should be permitted."[24] Accordingly, it restrained Lynn from relocating Natalie. After unsuccessfully moving for reconsideration, Lynn filed this appeal.
*320 The only issue on appeal is whether the trial court erred by ordering Lynn not to relocate Natalie. Lynn argues that it did (1) by "failing to weigh each of the factors under RCW 26.09.520[;]"[25] (2) by finding that travel between Vancouver and Edmonds would cause the children to be in "constant and perpetual motion[;]"[26] (3) by "finding that relocation would extraordinarily disrupt the children's time together and reduce their quality time[;]"[27] and (4) by not finding that the "benefits of relocation to the children outweigh the detrimental effects, based on the eleven statutory factors."[28]
The premise underlying Lynn's first argument is that the trial court failed to consider each factor listed in RCW 26.09.520. Yet nothing in the record shows that is true. There is nothing in the statute or in the legislative history supplied by Lynn that requires a court to orally address each and every statutory factor on the record. The court's written findings expressly state that the court reached its decision "[a]fter analysis of the factors ... outlined in RCW 26.09.520."[29] The only basis for Lynn's claim that the trial court failed to consider all factors is that it did not accept her view of those factors  and that is not enough to show that the court did not consider them, or that the court abused its discretion in considering them.[30] We reject this first argument.
The second argument is that the trial court erred by finding that the relocation would cause the children to be in "constant and perpetual motion" that would unduly disrupt their lives. Joseph's materials contain evidence sufficient to support the finding, the trial court had discretion to make (or not make) it, and the trial court did not abuse its discretion here.
The third argument is that the trial court erred by finding that relocation would disrupt the children's time together and reduce their "quality time." Again, however, Joseph's materials contain evidence sufficient to support the finding, the trial court had discretion to make (or not make) it, and the trial court did not abuse its discretion here.
In her fourth and last argument, Lynn asserts that the "benefits of relocation to the children outweigh the detrimental effects, based on the eleven statutory factors."[31] She then argues each factor to us. As a result, she appears to be asking us to weigh and balance the various factors in the first instance, without deference to the trial court, even though we have never seen the people involved. She might, however, be asking us to rule that her case was so strong in the trial court that no reasonable mind could have found against her, and thus she was entitled to judgment as a matter of law. Regardless of which assertion she is making, however, we decline to accept it. The trial court was charged with weighing and balancing the various statutory factors, it necessarily had discretion while doing that, and nothing in this record shows an abuse of that discretion.
Affirmed.
I concur: HOUGHTON, J.
HUNT, C.J. (concurring).
I concur in the majority's result but write separately to express reservations about the trial court's lack of explicit findings concerning how it balanced the detrimental effects of the relocation on the children against the benefits to their mother, Lynn Horner.
RCW 26.09.520 requires that for the objecting party, here, Joseph Horner, to rebut the statutory presumption "that the intended relocation of the child will be permitted," that party must demonstrate that "the detrimental effect of the relocation outweighs the benefit of the change to the child and the relocating person." (Emphasis added.) *321 Here, the trial court's findings focused on the children, concluding that the detrimental effects of the relocation outweighed its beneficial effects. Clerk's Papers (CP) at 130-32.
The trial court did not enter specific findings balancing the relocation's effects on the mother. Rather, it found, "Petitioner's reasons for requesting for relocation have merit." CP at 129. Nonetheless, the trial court concluded that "[t]he detrimental effects of the relocation outweigh the benefit of the change to the child and Petitioner." CP at 131 (emphasis added). The trial court expressed no specific detriments to the mother. But the trial court did find that the relocation would be detrimental to the children, each of whom lives with a different parent, identifying the stress of the commute and the impact on their sibling relationship.[32]
Nowhere in the findings or the record does the trial court support this conclusion by expressly balancing the detriment and benefit of the relocation on the relocating mother, as the statute requires. Nonetheless, I agree with the majority that the record does not show an abuse of trial court discretion, and therefore, I concur in the majority's result.
NOTES
[1] 133 Wash.2d 39, 940 P.2d 1362 (1997).
[2] 133 Wash.2d at 55, 940 P.2d 1362.
[3] 139 Wash.2d 694, 989 P.2d 1120 (1999).
[4] 139 Wash.2d at 715, 989 P.2d 1120.
[5] Laws of 2000, ch. 21, § 1.
[6] RCW 26.09.405(1)(a).
[7] RCW 26.09.420.
[8] RCW 26.09.430.
[9] RCW 26.09.480(1).
[10] RCW 26.09.500(1).
[11] RCW 26.09.520.
[12] RCW 26.09.520.
[13] RCW 26.09.520.
[14] See RCW 26.09.420, RCW 26.09.520.
[15] Clerk's Papers (CP) at 47.
[16] CP at 52.
[17] CP at 62.
[18] CP at 59.
[19] CP at 59-60.
[20] CP at 57.
[21] CP at 57.
[22] CP at 67. Lynn had proposed that she and Joseph meet midway between Vancouver and Edmonds every other weekend, so that Natalie could be exchanged without either driving the entire trip.
[23] CP at 72.
[24] CP at 72.
[25] Br. of Appellant at 14.
[26] Br. of Appellant at 21.
[27] Br. of Appellant at 23.
[28] Br. of Appellant at 24.
[29] CP at 72.
[30] See In re Marriage of Christel and Blanchard, 101 Wash.App. 13, 20-21, 1 P.3d 600 (2000) (appellate court reviews for abuse of discretion).
[31] Br. of Appellant at 24.
[32] The statute does not set forth how the trial court is to weigh benefits to the relocating parent against detriments to the child. The statute says only that in order to defeat the proposed relocation, the detriments must outweigh the benefits for both the relocating parent and the child(ren). RCW 26.09.520.