[No. 73540-9.   En Banc.]
Argued January 13, 2004.     Decided June 24, 2004.

*In the Matter of the Marriage of* LYNN I. HORNER, *Petitioner,* and JOSEPH R. HORNER, *Respondent.*

*Catherine Wright Smith* (of *Edwards, Sieh, Smith & Goodfriend, P.S.*) and *Tonya Kowalski* (of *Kowalski Law Office*), for petitioner.

*Suzan L. Clark*, for respondent.

*Jill D. Bowman* on behalf of Northwest Women's Law Center and Washington State Coalition Against Domestic Violence, amici curiae.

FAIRHURST, J. — In this child relocation case, the trial court denied relocation and the Court of Appeals affirmed, applying the abuse of discretion standard of review. We review this moot case because it presents issues of continuing and substantial public interest. We reverse the Court of Appeals because the trial court abused its discretion by denying relocation when neither its specific findings of fact nor its oral opinion indicate consideration and balancing of the 11 child relocation factors enumerated in RCW 26.09.520.

## I. WASHINGTON'S CHILD RELOCATION ACT

The legislature enacted Washington's child relocation act, RCW 26.09.405-.560, in 2000 (hereinafter CRA). LAWS

OF 2000, ch. 21, § 1. The CRA shifts the analysis away from only the best interests of the child to an analysis that focuses on both the child and the relocating person. RCW 26.09.520. The CRA creates a rebuttable presumption that relocation will be permitted. *Id.* To rebut this presumption, an objecting party must demonstrate "that the detrimental effect of the relocation outweighs the benefit of the change to the child and the relocating person, based upon the following [child relocation] factors." *Id.* The factors are not weighted or listed in any particular order. *Id.* The factors consider:

(1) The relative strength, nature, quality, extent of involvement, and stability of the child's relationship with each parent, siblings, and other significant persons in the child's life;

(2) Prior agreements of the parties;

(3) Whether disrupting the contact between the child and the person with whom the child resides a majority of the time would be more detrimental to the child than disrupting contact between the child and the person objecting to the relocation;

(4) Whether either parent or a person entitled to residential time with the child is subject to limitations under RCW 26-.09.191;[1]

(5) The reasons of each person for seeking or opposing the relocation and the good faith of each of the parties in requesting or opposing the relocation;

(6) The age, developmental stage, and needs of the child, and the likely impact the relocation or its prevention will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child;

(7) The quality of life, resources, and opportunities available to the child and to the relocating party in the current and proposed geographic locations;

(8) The availability of alternative arrangements to foster and continue the child's relationship with and access to the other parent;

---

[1] RCW 26.09.191 limits a parent's residential time with a child where the parent has engaged in conduct including willful abandonment, abuse, domestic violence or assault.

(9) The alternatives to relocation and whether it is feasible and desirable for the other party to relocate also;

(10) The financial impact and logistics of the relocation or its prevention; and

(11) For a temporary order, the amount of time before a final decision can be made at trial.

*Id.*

A person who resides a majority of the time with a child initiates the relocation process by serving notice to all persons entitled to residential time or visitation with the child. RCW 26.09.430. Unless good cause is shown, the relocation is permitted if a person entitled to object does not file an objection within 30 days of his receipt of the notice of the relocation. RCW 26.09.500(1).

## II. FACTS

Less than six weeks after the parties' dissolution, petitioner notified respondent that she intended to relocate their daughter Natalie[2] to Edmonds, Washington, so petitioner could care for her ill parents who resided in Edmonds. Respondent timely filed an objection asserting four arguments that loosely correlate to 4 of the 11 child relocation factors. Petitioner responded with a declaration asserting the benefits of the relocation.

During the hearing on the petition to relocate, respondent asked the trial court whether he should address the child relocation factors.[3] The court did not respond and respondent did not discuss the factors. Similarly, the trial

---

[2] The parenting plan provided that the parties' 5 year old daughter Natalie would primarily reside with petitioner, their 16 year old son Kyle would primarily reside with respondent, the children would alternate weekends between the parties, and the children would be together on weekends, holidays, and school breaks. During the dissolution proceedings, both petitioner and respondent resided in Vancouver, Washington.

[3] *See* 1 Verbatim Report of Proceedings (VRP) (Feb. 12, 2001) at 7-8 ("Now, do you want me to go into talking about the disruption to Natalie and the statutory factors which we've spelled out in my brief? I'm certainly able to do that if you'd like to hear more about that, but I know that our objection was thorough and detailed, and it doesn't add up for Mom to be given a green light to go up there

court did not discuss the child relocation factors in its oral ruling. The bulk of the ruling focused on the sibling relationship between Natalie and Kyle and the children's best interests in light of their split custody situation.

The trial court's order on objection to relocation/modification contained 14 findings of fact discussing the merits of the relocation. Findings 1 and 2 pertained to petitioner. Findings 3 though 11 focused on the sibling relationship between Natalie and Kyle and the children's best interests in light of their split custody situation. Findings 12 through 14 contained the court's ultimate conclusions and/or referenced important statutory language. Finding 12 stated "[t]he detrimental effects of the relocation outweigh the benefit of the change to the child and Petitioner." Clerk's Papers (CP) at 72. Finding 13 stated "[a]fter analysis of the factors for consideration outlined in RCW 26.09.520, the court has determined Respondent has rebutted the presumption that the relocation should be permitted." *Id.* Finding 14 stated "[f]or these reasons, Respondent's request for an order restraining Petitioner from changing the child Natalie's principle residence should be granted." *Id.* Accordingly, none of the findings specifically mentioned any of the child relocation factors, and the vast majority of the findings focused on the sibling relationship between Natalie and Kyle and the children's best interests in light of their split custody situation.

Petitioner filed a motion for reconsideration and a supplemental affidavit challenging many of the findings and reasserting the benefits of relocation. Respondent replied with a declaration refuting petitioner's challenges and assertions. The parties' submissions generally discussed the pros and cons of relocation, but failed to specifically mention RCW 26.09.520 and/or the child relocation factors. During oral argument on the motion for reconsideration, Respondent again asked whether he should address the child relocation factors and whether the court wished to

with Natalie."). The record does not contain a brief in which respondent discusses each of the 11 child relocation factors. The record does contain the objection.

enter additional findings on the factors.[4] The court did not respond and respondent only briefly mentioned child relocation factors 1 and 3. The trial court denied petitioner's motion to reconsider in an oral ruling and a subsequent written order. Neither the ruling nor the order mentioned the child relocation factors, and the ruling again focused on the sibling relationship between Natalie and Kyle and the children's best interests in light of their split custody situation.

Petitioner appealed to Division Two. The Court of Appeals applied the abuse of discretion standard of review and affirmed holding "nothing in the record shows" that the trial court failed to consider the child relocation factors and that "[t]here is nothing in the statute or in the legislative history supplied by Lynn that requires a court to orally address each and every statutory factor *on the record." In re Marriage of Horner*, 114 Wn. App. 495, 501, 58 P.3d 317 (2002). This court granted the petition for review. *In re Marriage of Horner*, 149 Wn.2d 1027, 78 P.3d 656 (2003).

Before we granted review, Kyle turned 18, petitioner's parents recovered from their health problems, and petitioner, acting pro se, served respondent with a revised parenting plan and notice of her intent to relocate Natalie from Vancouver, Washington, to Atlanta, Georgia.[5] The day after this court granted review, respondent timely filed an objection to the Atlanta relocation in Clark County Superior Court. Subsequently, petitioner alleged that she did not receive proper service of respondent's objection, obtained an

---

[4] *See* 2 VRP (Mar. 29, 2001) at 24-26 ("If you want me to go through the statutory criteria, I certainly can do that . . . . Now, I can go through the findings and match them up with specific provisions of 520, but then we can also supplement the order that was already entered and add findings related to you having addressed every criteria . . . . I don't know if you want me to go that far. Our brief that you had at the original motion for the relocation addressed the statute. I perceived in preparing the findings that if you wanted to be more detailed, you would have . . . . If they're going to take this to the Court of Appeals, maybe you want to add supplemental findings.").

[5] Petitioner requested to relocate Natalie to Atlanta because her employer closed its Vancouver offices and offered her a promotion in its Atlanta offices.

ex parte order approving the relocation and the revised parenting plan, and relocated Natalie to Atlanta.[6]

## III. ISSUES

A. Is the issue of what a trial court must do in a child relocation case with respect to the child relocation factors an issue of continuing and substantial public interest that this court should review although the case is moot?

B. Did the trial court abuse its discretion when it failed to enter specific findings of fact or articulate in its oral opinion the child relocation factors?

## IV. ANALYSIS

A. The Trial Court's Failure To Enter Specific Findings or Articulate in Its Oral Opinion the Child Relocation Factors Raises an Issue of Continuing and Substantial Public Interest that this Court Will Review although this Case Is Moot

██ "A case is moot if a court can no longer provide effective relief." *Orwick v. City of Seattle*, 103 Wn.2d 249, 253, 692 P.2d 793 (1984). As a general rule, this court will not review a moot case. *Id.* However, this court may review a moot case if it presents issues of continuing and substantial public interest. *Westerman v. Cary*, 125 Wn.2d 277, 286, 892 P.2d 1067 (1994) (quoting *Sorenson v. City of Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972)). In deciding whether a case presents issues of continuing and substantial public interest:

---

[6] Shortly after petitioner relocated Natalie to Atlanta, respondent filed a motion to compel Natalie's return to Vancouver, alleging that he timely filed and served an objection to the Atlanta relocation. Petitioner filed a motion and affidavit of prejudice because the same judge who denied the Edmonds relocation was scheduled to hear the Vancouver relocation. The judge denied petitioner's motion and affidavit, asserting that he had jurisdiction over the Atlanta relocation based on his order denying the Edmonds relocation. Petitioner subsequently moved this court for direct review of the trial court's denial of her motion and affidavit. This court will address that matter under a different cause number.

Three factors in particular are determinative: "(1) whether the issue is of a public or private nature; (2) whether an authoritative determination is desirable to provide future guidance to public officers; and (3) whether the issue is likely to recur". *Hart*[*v. Dep't of Soc. & Health Servs.*, 111 Wn. 2d 445,] 448, [759 P.2d 1206 (1988)]. A fourth factor may also play a role: the "level of genuine adverseness and the quality of advocacy of the issues". *Hart*, [111 Wn.2d] at 448. . . . Lastly, the court may consider "the likelihood that the issue will escape review because the facts of the controversy are short-lived". [*City of*] *Seattle v. State*, 100 Wn.2d 232, 250, 668 P.2d 1266 (1983) (Rosellini, J., dissenting).

*Id.* at 286-87 (citation omitted).

This case is moot. Petitioner no longer desires to relocate to Edmonds because her parents recovered from their health problems and she relocated Natalie to Atlanta. Moreover, the main reason the trial court denied the relocation (to further the parenting plan's goal of promoting the sibling relationship between Natalie and Kyle) no longer applies because Kyle turned 18 and is no longer subject to the parenting plan.

■ Nevertheless, this case presents an issue of continuing and substantial public interest meriting this court's review because it asks whether the trial court must enter specific findings or articulate in its oral opinion the child relocation factors. This issue is of a public nature because it concerns the interpretation of RCW 26.09.520 and because the Court of Appeals opinion was not limited to the *Horner* facts, but contained an interpretation of the statute. *See Horner*, 114 Wn. App. at 501 ("There is nothing in the statute or in the legislative history supplied by Lynn that requires a court to orally address each and every statutory factor *on the record*."). The lower courts' inconsistent application of RCW 26.09.520 demonstrates that our guidance is necessary.[7] Issues surrounding the interpretation of RCW 26.09.520 are likely to recur given the frequency of disso-

---

[7] While the trial court in this case did not enter specific findings or articulate in its oral ruling the child relocation factors, 114 Wn. App. at 501, the trial courts in *In re Marriage of Venable*, noted at 118 Wn. App. 1049, 2003 WL 22173061, at *2-4,

lution, joint custody, and relocation in today's society. The issue may even recur in the parties' pending relocation case, as the same judge who denied the Edmonds relocation is currently scheduled to hear the Atlanta relocation.[8] The quality of the advocacy is good because the parties' briefing addresses the vital issue of the case (the interpretation of RCW 26.09.520) and the genuinely adverse parties fully litigated the merits of this case on numerous occasions. To deny review at this point would be a waste of judicial resources. *See Orwick*, 103 Wn.2d at 253 ("After a hearing on the merits, it is a waste of judicial resources to dismiss an appeal on an issue of public importance which is likely to recur in the future."). Finally, as this case demonstrates, relocation cases are likely to evade review because circumstances leading to relocation are frequently temporary in nature. *See In re Custody of Osborne*, 119 Wn. App. 133, 148 n.8, 79 P.3d 465 (2003) (encouraging counsel to use accelerated review procedures due to the dynamic nature of relocation cases).

B.   The Trial Court Abused its Discretion When It Failed To Enter Specific Findings of Fact or Articulate in Its Oral Opinion the Child Relocation Factors

██ ██ This court reviews trial court decisions dealing with the welfare of children for abuse of discretion. *In re Marriage of McDole*, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993). Abuse of discretion occurs "when the trial court's decision is manifestly unreasonable or based upon untenable grounds or reasons." *State v. Brown*, 132 Wn.2d 529, 572, 940 P.2d 546 (1997).

---

and *In re Marriage of Grigsby*, 112 Wn. App. 1, 9, 57 P.3d 1166 (2002), entered findings of fact on the child relocation factors.

[8] This point satisfies the mootness exception of the United States Supreme Court. The Court grants review to moot cases where the matter is " 'capable of repetition, yet evading review,' " which requires "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 148-49, 96 S. Ct. 347, 46 L. Ed. 2d 350 (1975).

A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard.

*In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997). This court recently applied abuse of discretion "[w]here a trial court has determined, based on affidavits alone, that adequate cause does not exist to justify a full hearing on a petition to modify a parenting plan." *In re Parentage of Jannot*, 149 Wn.2d 123, 125, 65 P.3d 664 (2003). Even though this court applied such a deferential standard of review, we remanded *Jannot* "for an articulation on the record of the reasons for denying a full hearing." *Id.* at 129. Even though *Jannot* applied the same deferential standard of review that the Court of Appeals applied here, *Jannot* indicates that a trial court must articulate on the record the reasons behind its determinations.

▓ In reviewing whether the trial court abused its discretion, we first consider whether trial courts must consider all of the child relocation factors. We hold that they must. The factors are conjunctive because "and" separates factors 10 and 11. The factors are equally important because they are neither weighted nor listed in any particular order. RCW 26.09.520. Finally, consideration of all the factors is logical because they serve as a balancing test between many important and competing interests and circumstances involved in relocation matters.[9] Particularly important in this regard are the interests and circumstances of the relocating person. Contrary to the trial court's repeated references to the best interests of the child, the standard for relocation decisions is not only the best interests of the child. As stated by Division One of the Court of Appeals:

---

[9] Factors 1, 3, 6, and 8 focus on the child's interests. Factors 7, 9, and 10 focus on the family and its material needs. Factors 2, 4, and 11 focus on special circumstances. Factor 5 considers the reasons of the relocating and objecting parties.

Rather than contravening the traditional presumption that a fit parent will act in the best interests of the child, . . . the relocation statute *establishes* a rebuttable presumption that the relocation of the child will be allowed. Thus, the Act both incorporates and gives substantial weight to the traditional presumption that a fit parent will act in the best interests of her child. The burden of overcoming that presumption is on the objecting party, who can prevail only by demonstrating that the detrimental effect of the relocation upon the child outweighs the benefit of the change to the child and the relocating person. RCW 26.09.520.

Moreover, the relocation statute provides specific guidance for trial courts considering orders restraining or permitting relocation of the child. Rather than containing a general statement of the "best interests of the child" standard . . . , RCW 26.09.520 contains 11 specific factors for the trial court to consider at a hearing to determine whether relocation of the child will be permitted.[10]

*Osborne*, 119 Wn. App. at 144-45.

We adopt this reasoning and hold that trial courts must determine whether the "detrimental effect of the relocation outweighs the benefit of the change to the child and the relocating person." RCW 26.09.520. We further require that trial courts must consider each of the child relocation factors. These requirements will ensure that trial courts consider the interests of the child and the relocating person within the context of the competing interests and circumstances required by the CRA.

We next consider the manner in which trial courts must document their consideration of each child relocation factor. Ideally, trial courts will enter findings of fact on each factor. Findings of fact play a pivotal role upon review: "[t]he

---

[10] Many of the child relocation factors refer to the interests and/or circumstances of the relocating person. *See, e.g.,* RCW 26.09.520(2) ("Prior agreements of the parties"); (4) ("Whether either parent or a person entitled to residential time with the child is subject to limitations under RCW 26.09.191"); (5) ("The reasons of each person for seeking or opposing the relocation and the good faith of each of the parties in requesting or opposing the relocation"); (7) ("The quality of life, resources, and opportunities available to the child and to the relocating party in the current and proposed geographic locations"); and (10) ("The financial impact and logistics of the relocation or its prevention").

purpose of findings on ultimate and decisive issues is to enable an appellate court to intelligently review relevant questions upon appeal, and only when it clearly appears what questions were decided by the trial court, and the manner in which they were decided, are the requirements met." *Schoonover v. Carpet World, Inc.*, 91 Wn.2d 173, 177, 588 P.2d 729 (1978).

This court addressed whether a trial court erred in failing to enter specific findings of fact on each statutory factor in *In re Marriage of Croley*, 91 Wn.2d 288, 290-93, 588 P.2d 738 (1978). Therein, this court found that the trial court did not err in failing to enter such findings because substantial evidence was presented on each factor, the trial court's oral opinion and written findings of fact reflected that it considered each factor, and the trial court complied with CR 52(a)(2)(B). *Id.* at 291-92.

When this court considers whether a trial court abused its discretion in failing to document its consideration of the child relocation factors, we will ask two questions. Did the trial court enter specific findings of fact on each factor? If not, was substantial evidence presented on each factor, and do the trial court's findings of fact and oral articulations reflect that it considered each factor? Only with such written documentation or oral articulations can we be certain that the trial court properly considered the interests of the child and the relocating person within the context of the competing interests and circumstances required by the CRA.

The trial court abused its discretion because it failed to satisfy either of these methods of documenting its consideration of the child relocation factors. It failed to satisfy the first method because it did not enter specific findings of fact on each child relocation factor. It failed to satisfy the second method because the record does not reflect that substantial evidence was presented on each child relocation factor, and the trial court's written findings and oral ruling do not reflect that it considered each factor. Without a discussion of each child relocation factor in the trial court's findings or

oral opinion, the trial court's conclusory findings that "the detrimental effects of the relocation outweigh the benefit of the change to the child and Petitioner," and "[a]fter analysis of the factors for consideration outlined in RCW 26.09.520, the court has determined Respondent has rebutted the presumption that the relocation should be permitted" are insufficient because we cannot review the trial court's application of the facts to the child relocation factors. CP at 72. In other words, we cannot review the trial court decision because its basis is unclear. We reverse the Court of Appeals.[11]

## V. CONCLUSION

We review this moot case because it presents issues of continuing and substantial public interest. We reverse the Court of Appeals on the grounds that the trial court abused its discretion when it failed to enter specific findings of fact or discuss orally the child relocation factors.

ALEXANDER, C.J., and JOHNSON, MADSEN, IRELAND, BRIDGE, CHAMBERS, and OWENS, JJ., concur.

SANDERS, J. (dissenting) — As the majority correctly recognizes, this case is moot. Majority at 892. Generally this court will not render a decision on a moot case; however, we may exercise our discretion and reach the merits if the case presents an issue or issues of continuing and substantial public interest. *Dioxin/Organochlorine Ctr. v. Pollution Control Hearings Bd.*, 131 Wn.2d 345, 350-51, 932 P.2d 158 (1997).

A court must consider the following factors when determining whether a sufficient public interest is involved: "(1) the public or private nature of the question presented; (2) the desirability of an authoritative determination which will provide future guidance to public officers; and (3) the

---

[11] If this case were not moot, we would follow *Jannot* and remand to the trial court for entry of specific findings of fact or oral articulations of the child relocation factors.

likelihood that the question will recur." *Dunner v. McLaughlin*, 100 Wn.2d 832, 838, 676 P.2d 444 (1984). A court may also consider as fourth and fifth factors " 'the level of genuine adverseness and the quality of advocacy of the issues,' " *Westerman v. Cary*, 125 Wn.2d 277, 286, 892 P.2d 1067 (1994) (quoting *Hart v. Dep't of Soc. & Health Servs.*, 111 Wn.2d 445, 448, 759 P.2d 1206 (1988)), and " 'the likelihood that the issue will escape review because the facts of the controversy are short-lived,' " *id.* at 286-87 (quoting *City of Seattle v. State*, 100 Wn.2d 232, 250, 668 P.2d 1266 (1983) (Rosellini, J., dissenting)).

Two factors compel dismissal: (1) whether the issue is of a public or a private nature and (2) the level of genuine adverseness and the quality of advocacy of the issues. Here the primary issue is whether the trial court properly applied the child relocation factors, articulated in RCW 26.09.520, when rendering its decision to deny Lynn I. Horner's request to relocate her daughter, Natalie (whose father is Joseph R. Horner), to Edmonds, Washington. The majority claims this case presents an issue of a public nature because it involves an interpretation of RCW 26.09.520. Majority at 892. But the majority fails to recognize that the dispute between Lynn and Joseph over the proposed relocation of their daughter is an entirely private matter. Additionally, interpretation and application of the child relocation factors are inherently fact specific, which weighs strongly against the majority's conclusion that this case presents an issue public in nature. *See Hart*, 111 Wn.2d at 449.

More importantly, the level of genuine adverseness and the quality of advocacy of the issues in this case are strikingly low. The majority concludes "the advocacy is good because the parties' briefing addresses the vital issue of the case (the interpretation of RCW 26.09.520)." Majority at 893. But despite the majority's praise of the advocacy before us, it utterly fails to point out that Joseph has not filed a brief on the merits in this case in over two years. He has, however, submitted two short letters to this court. The first

letter (entitled "RESPONDENT'S RESPONSE TO SUP-PLEMENTAL BRIEF") requests this case be dismissed as moot, Resp't's Resp. to Suppl. Br. at 2, and the second is in response to a letter from our clerk requesting the parties file written comments by letter as to whether this case involves issues of continuing and substantial public interest. The last brief Joseph filed on the merits was in the Court of Appeals on December 17, 2001. This raises a substantial concern that mootness has diminished Joseph's adversary enthusiasm and increases the risk that the issues have not been sufficiently argued. *Cf. State ex rel. Distilled Spirits Inst., Inc. v. Kinnear*, 80 Wn.2d 175, 178, 492 P.2d 1012 (1972) (recognizing importance of adequate briefing and argument when issuing advisory opinion); *see also Nat'l Elec. Contractors Ass'n v. Seattle Sch. Dist. No. 1*, 66 Wn.2d 14, 23, 400 P.2d 778 (1965) (noting danger of reaching an erroneous decision when deciding moot cases because "[s]omething of the adversary enthusiasm is lost") (Rosellini, C.J., dissenting). If a party is indifferent to the result and indeed requests the tribunal dismiss his case, I cannot see how his advocacy can be labeled "good."

The majority also contends "[i]ssues surrounding the interpretation of RCW 26.09.520 are likely to recur given the frequency of dissolution, joint custody, and relocation in today's society." Majority at 892-93. That may very well be true but in my judgment that leads naturally to the conclusion that this court ought to exercise judicial restraint and reserve ruling on the issue presented in this case until it is properly before the court. There is no compelling reason to reach the merits now. Therefore, this case does not present any issues of such public importance justifying the majority's decision to reach the merits of this admittedly moot case.

I dissent.