IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 37358-4-III |
| | ) | |
| ANGELA K. SCOUTTEN, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| MICHAEL J.E. SCOUTTEN, | ) | |
| | ) | |
| Respondent. | ) | |

PENNELL, C.J. — Angela Kristen Schreiner, formerly known as Angela Scoutten, appeals various orders related to a trial court decision authorizing Michael Scoutten to move their daughter, M.S., to the country of Wales in the United Kingdom. We affirm.

FACTS

M.S. was born in April 2010. Her parents divorced shortly thereafter. For the first few years after the divorce, M.S. lived with her mother, Angela Schreiner. But in 2015 the parenting plan was modified to place M.S. in the primary care of her father, Michael

No. 37358-4-III
*In re Marriage of Scoutten*

Scoutten, who lived with M.S.'s stepmother, Monica Scoutten. Ms. Schreiner was given residential time with M.S. every other weekend along with one week day after school.

The 2015 plan imposed parenting restrictions on Ms. Schreiner due to deleterious conduct, including abusive use of conflict and fabricated allegations against Mr. Scoutten.[1] As part of the restrictions, Mr. Scoutten was given exclusive decision-making authority over M.S, with the exception of day-to-day decisions arising during Ms. Schreiner's residential time.

---

[1] The court found Ms. Schreiner had engaged in conduct resulting in an adverse effect to M.S. based on the following factors:

1. Neglect or substantial nonperformance of parenting functions.
2. The absence or substantial impairment of emotional ties between the child and the mother. Evidence at trial was overwhelming that the child does not want to return to her mother at the conclusion of residential time with father.
3. The abusive use of conflict by the mother which creates the danger of serious damage to the child's psychological development.
4. Instability which the court finds detrimental to the child.
5. The mother's failure to communicate and engage in joint decision making and co-parenting.
6. The court finds the mother has engaged in making untrue statements, including untrue allegations against the father and statements used to deprive the father of his opportunities to speak with the child, including on the child's birthday.

Clerk's Papers at 54.

2

Ms. Schreiner unsuccessfully appealed the 2015 parenting plan. *In re Marriage of Scoutten*, No. 48027-1-II, slip op. at 1-2 (Wash. Ct. App. Oct. 25, 2016) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2048027-1-II%20Unpublished%20 Opinion.pdf. In that appeal, Division Two of this court affirmed the trial court's disposition based on evidence that Ms. Schreiner's living circumstances were unstable and that M.S. was more bonded to Mr. Scoutten than Ms. Schreiner. It was also noted Ms. Schreiner sowed conflict in M.S.'s life by making unsubstantiated allegations against the Scouttens, including a claim that Mr. Scoutten "allowed a pedophile to be around M.S." *Id*. at 19.

Shortly after the 2015 plan went into effect, the Scouttens arranged for M.S. to attend therapy. The goals included accepting her parents' divorce and identifying her emotions.

Several months passed before Ms. Schreiner became aware of M.S.'s therapy sessions. Upon this discovery, Ms. Schreiner contacted the therapist by e-mail to complain about being excluded from the process. M.S.'s therapist invited Ms. Schreiner to attend a therapy session and she provided Ms. Schreiner with some updates on M.S.'s progress, as permitted by Mr. Scoutten. Ms. Schreiner was dissatisfied with this level of interaction and repeatedly e-mailed the therapist to voice her frustrations. The majority of

Ms. Schreiner's e-mails to the therapist included derogatory remarks about Michael and Monica Scoutten. A number of Ms. Schreiner's e-mails accused the Scouttens of illegal conduct.

From 2015 to 2018, Ms. Schreiner made several allegations against Monica Scoutten. Law enforcement and child protective services became involved. Mutual restraining orders were imposed. Charges were never brought against Ms. Scoutten, nor did child protective services take any action.

In early 2018, Mr. Scoutten learned he was selected for an army position in the country of Wales.[2] Mr. Scoutten notified Ms. Schreiner of his intent to move and filed a relocation petition under RCW 26.09.520. Ms. Schreiner objected to relocation and asked for a modification so that M.S. would be placed back in her care.[3]

A three-day trial was held on the relocation petition and request for modification. The court heard testimony from Michael and Monica Scoutten, Angela Schreiner, Ms. Schreiner's stepfather, individuals from M.S.'s school, and friends of M.S. and Ms.

---

[2] Mr. Scoutten is a noncommissioned officer in the United States Army.

[3] Mr. Scoutten actually filed two relocation petitions. The first one was withdrawn after Mr. Scoutten learned the Army had not authorized him to move to Wales with his family. Once the Army's orders were amended to allow his family to relocate as well, Mr. Scoutten filed a second relocation petition. Ms. Schreiner objected to both petitions and requested modification so that M.S. would be returned to her custody.

4

Schreiner. The court also received records from M.S.'s therapist, along with a variety of school, police, medical, and child protective services records.

The Scouttens and Ms. Schreiner presented very different depictions of M.S.'s living circumstances. According to Ms. Schreiner, M.S.'s current living circumstances were a disaster. She alleged Ms. Scoutten engaged in physical abuse and contended Mr. Scoutten was essentially unavailable due to his military deployments. The Scouttens denied Ms. Schreiner's allegations. They claimed Ms. Schreiner was the one creating conflict in M.S.'s life through her false allegations of misconduct and improper assertions of decision-making authority to M.S.'s care providers.

After hearing the evidence, the trial court credited the testimony of the Scouttens over Ms. Schreiner's testimony. This assessment was based not only on demeanor, but the records from M.S.'s therapist.[4]

M.S.'s therapy records supported the Scouttens' depiction of M.S.'s living circumstances. Notes from the therapist indicate most of M.S.'s familial stress came from her mother. M.S. made comments to her therapist indicating Ms. Schreiner spoke ill of Ms. Scoutten and that Ms. Schreiner pressured M.S. not to talk during therapy. M.S. told her therapist that she loves her father and Ms. Scoutten and that she likes living with

---

[4] The therapy records were admitted at trial by agreement of the parties.

them. At times, M.S. commented that she did not like spending too much time with her mother. M.S. told her therapist that she was excited about moving to Wales, even though it meant she would not see her mom for a while. In a progress report, M.S.'s therapist stated she thought the move to Wales would be good for M.S.

The trial court granted Mr. Scoutten's relocation petition, issued an amended parenting plan and child support schedule, and ordered Ms. Schreiner to cooperate in the release of M.S.'s passport. Ms. Schreiner has filed a timely pro se appeal. The case was submitted without oral argument to a Division Three panel after an administrative transfer from Division Two.

## ANALYSIS

Superior courts have considerable discretion in dealing with the custody and welfare of children. *In re Marriage of Horner*, 151 Wn.2d 884, 893, 93 P.3d 124 (2004). Family law disputes are often fact-intensive and turn on credibility assessments that can only be made on an inperson basis. Appellate judges are not fact finders. We review family law decisions merely for abuse of discretion. Under that standard, reversal is warranted only if a trial court's decision is "manifestly unreasonable or based upon untenable grounds or reasons." *State v. Brown*, 132 Wn.2d 529, 572, 940 P.2d 546 (1997). Ms. Schreiner's various arguments fail to meet this demanding standard.

*Relocation decision*

Washington law favors relocation by a primary residential parent. Under RCW

26.09.520, there is a rebuttable presumption that relocation "will be permitted." A person

with residential or visitation rights may object to relocation and rebut the relocation

presumption "by demonstrating that the detrimental effect of the relocation outweighs the

benefit of the change to the child and the relocating" parent. *Id*.; *see In re Marriage of*

*McNaught*, 189 Wn. App. 545, 553-56, 359 P.3d 811 (2015) (affirming objecting parent

bears "burdens of persuasion and production" to rebut relocation presumption).

The trial court here followed the applicable legal standards in issuing its relocation

decision. The court discussed each of the eleven relocation factors on the record. *See*

RCW 26.09.520(1)-(11). It found that some of the factors favored the father, some

favored the mother, and some were neutral. In the final analysis, the court determined that

relocation would be good for M.S. This determination was based on the court's credibility

assessments and M.S.'s therapy records. The court therefore acted within its discretion in

deciding Ms. Schreiner had not rebutted the presumption in favor of relocation. The

relocation decision must be affirmed.

In ruling Ms. Schreiner had not met her burden of rebutting the presumption in

favor of relocation, the court necessarily determined the parenting plan should not be

modified so as to make Ms. Schreiner the primary residential parent. Ms. Schreiner's

complaint that the trial court did not consider her modification request is without merit.

*Parenting plan restrictions*

RCW 26.09.191 authorizes trial courts to restrict a parent's residential time and

decision-making based on a finding of emotional abuse, RCW 26.09.191(1)-(2), or when

a parent's conduct has an adverse effect on the child's best interests. RCW 26.09.191(3).

A finding of abuse requires restrictions, whereas restrictions are optional when a parent's

conduct merely has an adverse effect.

*The trial court's .191 restrictions*

The trial court found restrictions appropriate under RCW 26.09.191(1), (2), and

(3).

With respect to RCW 26.09.191(1) and (2), the court found Ms. Schreiner

subjected M.S. to emotional child abuse, explaining as follows:

> Pursuant to the mother's past actions and consistent with her ongoing
> actions the court finds Mother's abusive use of conflict creates emotional
> child abuse and a serious danger of an adverse effect on the child's best
> interest. The mother's actions continue to create an emotional abuse of the
> child.

Clerk's Papers (CP) at 533.

8

With respect to RCW 26.09.191(3), the court made additional findings in support

of the conclusion that Ms. Schreiner engaged in conduct harmful to M.S.'s best interests:

1. The absence or substantial impairment of emotional ties between the child and the mother. Evidence at trial was overwhelming that the child does not want to return to her mother at conclusion of residential time with father.
2. The abusive use of conflict by the mother which creates the danger of serious damage to the child's psychological development.
3. Instability which the court finds detrimental to the child.
4. The mother's failure to communicate and engage in joint decision making and co-parenting.
5. The court finds the mother has engaged in making untrue statements, including untrue allegations against the father.

CP at 533.

Based on the foregoing findings, the trial court imposed the following restrictions:

- limitations on residential time;

- contact with M.S.'s school, medical providers, and counselors was limited to once a month by e-mail, absent an emergency;

- Mr. Scoutten was permitted to only respond to Ms. Schreiner's e-mails once a week, absent emergency or up-coming travel; and

- like the 2015 plan, Mr. Scoutten was given sole decision-making authority, except for day-to-day decisions while M.S. was in Ms. Schreiner's care.

9

*The restrictions were supported in fact*

The trial court had an adequate factual basis to impose restrictions based on emotional abuse under RCW 26.09.191(1) and (2). The testimony from Mr. and Ms. Scoutten demonstrated that the Scouttens provided M.S. with a loving and supportive household, but that Ms. Schreiner was often a disruptive force, making false claims against the Scouttens and involving law enforcement. M.S.'s therapy records indicate Ms. Schreiner pressured M.S. not to say negative things about her to her counselor.[5] Despite this pressure, M.S. eventually disclosed she heard her mother say mean things about Ms. Scoutten and that the she was upset about tensions between her two households. By 2018, M.S. told her therapist that she felt "'scared and icky when talking to mom.'" Sealed Ex. 15 at 244. M.S. worried that her mother would get mad and was watching her all the time. M.S. repeatedly made clear to her therapist that she did not want to spend too much time with her mother.

M.S.'s therapy records also support the trial court's finding of abusive use of conflict pursuant to RCW 26.09.191(3)(e). The records reveal Ms. Schreiner repeatedly

---

[5] The therapy notes state M.S. was often open when talking about her father and stepmother, but when it came to her mother M.S. was guarded and sometimes scared to talk. At one point, M.S. told her therapist her mother had told her not to talk in therapy because it would get someone in trouble. M.S. indicated she was scared of getting herself and her mother in trouble.

contacted M.S.'s therapist in a hostile, accusatory manner, calculated to paint the Scouttens in an improper light. For example, on January 14, 2016, Ms. Schreiner sent five e-mails to the therapist, alleging that the Scouttens were in contempt, that Ms. Scoutten had yelled at Ms. Schreiner in front of M.S., that Ms. Scoutten had spanked M.S. and been mean to her, and that Mr. Scoutten once strangled Ms. Schreiner. Ms. Schreiner's e-mails to the therapist rarely inquired as to M.S.'s well-being. Instead they focused on Ms. Schreiner's personal grievances against the Scouttens.

### *The restrictions were appropriately tailored*

The restrictions chosen by the trial court were reasonable under the circumstances. Ms. Schreiner was awarded unsupervised residential time with M.S each year and weekly telephone and video contact. The durational limits on Ms. Schreiner's residential time with M.S. are not excessive; they are a natural result of the practical difficulty of travel between Washington and Wales. The restrictions on Ms. Schreiner's decision-making and contact with care providers were based on evidence of Ms. Schreiner's habit of misusing contact with care providers as a method for sowing conflict between herself, M.S. and the Scouttens. There was no abuse of discretion in imposing RCW 26.09.191 restrictions.

11

*Child support modification*

    *Father's income*

Contrary to Ms. Schreiner's position, the trial court had sufficient information to calculate Mr. Scoutten's income for purposes of child support. Mr. Scoutten presented tax records for the four years preceding the hearings in this case. He also provided paystubs and bank statements for the months leading up to the court hearings. At the final hearing in December 2018, the parties pointed out that a housing allowance on Mr. Scoutten's November 2018 paycheck may have been incorrect.[6] Nevertheless, Mr. Scoutten provided all information he had and the information before the court provided a reasonable basis for determining Mr. Scoutten's income.

Ms. Schreiner complains that the support hearing should have been continued to allow further information regarding Mr. Scoutten's income. We find the trial court did not abuse its discretion in denying a continuance. The support hearing was held approximately six months after the relocation trial. It had been continued several times at Ms. Schreiner's request. The trial court acted appropriately in deciding to utilize information available in November 2018 to set child support.

---

[6] Mr. Scoutten's housing allowance is indicated as "BAH $0.30" in the entitlements section of his November 2018 paycheck. CP at 1285. He acknowledged this amount was incorrect as the military had yet to adjust his allowance.

12

*Mother's income*

At trial, there was no dispute that Ms. Schreiner was voluntarily unemployed and had no income. Thus, in calculating child support, the trial court was required to impute Ms. Schreiner's income according to the following order of priority:

> (a) Full-time earnings at the current rate of pay;
> (b) Full-time earnings at the historical rate of pay based on reliable information, such as employment security department data;
> (c) Full-time earnings at a past rate of pay where information is incomplete or sporadic;
> (d) Full-time earnings at minimum wage in the jurisdiction where the parent resides if the parent has a recent history of minimum wage earnings, is recently coming off public assistance, aged, blind, or disabled assistance benefits, pregnant women assistance benefits, essential needs and housing support, supplemental security income, or disability, has recently been released from incarceration, or is a high school student;
> (e) Median net monthly income of year-round full-time workers as derived from the United States bureau of census, current population reports, or such replacement report as published by the bureau of census.

RCW 26.19.071(6).

Ms. Schreiner's attorney argued the court should impute income according to minimum wage under RCW 26.19.071(6)(d). The court declined. Instead, the court imputed Ms. Schreiner's income according to the next priority level—median net income based on census data, pursuant to RCW 26.19.071(6)(e).

The trial court did not abuse its discretion in imputing income pursuant to RCW 26.19.071(6)(e). The record on appeal shows no recent minimum wage earnings to justify

13

imputation under RCW 26.19.071(6)(d). Instead, the evidence in the record showed

Ms. Schreiner was living an affluent lifestyle. The monthly rent at her condominium was

$1,700.00. She traveled to Thailand, France, and Hawaii during the months prior to trial.

Bank records revealed Ms. Schreiner frequently ate out at restaurants, including a $1,415

meal that she shared with her boyfriend at Canlis, a restaurant in Seattle. Ms. Schreiner

testified she was able to afford her various luxuries through the kindness of her parents,

brother, and boyfriend as well as student loans. Even crediting this explanation as true,

the trial court was permitted to take such resources into account in imputing Ms.

Schreiner's income according to the lowest priority level, RCW 26.19.071(6)(e). *See In re

Marriage of Foley*, 84 Wn. App. 839, 843, 930 P.2d 929 (1997) (applying former RCW

26.19.071(6) (1993)); *see also In re Marriage of Dodd*, 120 Wn. App. 638, 646, 86 P.3d

801 (2004) (court may impute income with census records under former RCW

26.19.071(6) (1997)  when parent's deception makes income "impossible to ascertain").

*Allocation of travel costs*

Under RCW 26.19.080(3), long-distance travel costs "shall be shared by the

parents in the same proportion as the basic child support obligation." This requirement

only extends to airfare or similar transportation expenses. *McNaught*, 189 Wn. App. at

567. It does not apply to lodging or other visitation costs. *Id*. "[A] trial court has discretion to decide what travel expenses are necessary and reasonable." *Id.*

The trial court here ordered travel costs be shared by the parties according to their child support percentages on a once per year basis. The end result was that Mr. Scoutten would pay 80 percent of airfare for M.S. and an adult companion to travel to and from Wales once per year. Ms. Schreiner was responsible for the remaining 20 percent. The court declined to order additional trips or travel expenses, given the cost of international airfare. The court noted Ms. Schreiner would be able to visit M.S. in Wales more often at her own expense, provided advance notice was given to Mr. Scoutten.

The trial court's travel decision fell within its wide range of discretion. Given the costs of international travel, it was not unreasonable for the court to limit Mr. Scoutten's responsibility for paying travel costs. Furthermore, Ms. Schreiner's recent history of overseas travel indicated she would be capable of some self-funded travel. We will not disturb the trial court's travel decision.

*Trial court's attorney fee award*

A trial court presiding over a family law proceeding "may order one party to pay a reasonable amount in attorney fees and costs to the other party after considering the financial resources of both parties." *In re Marriage of Burrill*, 113 Wn. App. 863, 873,

56 P.3d 993 (2002). The court "may also award attorney fees if one spouse's intransigence increased the legal fees of the other party." *Id*. In the case of intransigence, financial resources are irrelevant. *Id*.

The trial court imposed fees against Ms. Schreiner based on intransigence. Although Ms. Schreiner had valid reasons to oppose Mr. Scoutten's relocation petition, the trial court found Ms. Schreiner's accusations against the Scouttens were made in bad faith and they unnecessarily complicated the proceedings and increased the expended amount of attorney fees. Based on Ms. Schreiner's obstructionist conduct, the trial court awarded Mr. Scoutten $21,833 in fees.

The trial court did not abuse its discretion in awarding attorney fees. The facts at trial supported the conclusion that Ms. Schreiner was intransigent by repeatedly fabricating claims against the Scouttens. Although Ms. Schreiner's difficult conduct permeated almost every aspect of the case, the court reduced its fee award by nearly half in order to account for the fact that some of Ms. Schreiner's litigation was in good faith. This disposition was generous. Given that Ms. Schreiner's false allegations against the Scouttens permeated nearly every aspect of the parties' case, the court could have granted Mr. Scoutten's fee request in full. *Id*.; *see Foley*, 84 Wn. App. at 847. The final fee award is affirmed.

*Miscellaneous claims*

Ms. Schreiner makes several assignments of error that have not been preserved for appellate review. *See* RAP 2.5(a). Ms. Schreiner waived her appearance of fairness claim by failing to make a predisposition motion for disqualification. *State v. Blizzard*, 195 Wn. App. 717, 725-26, 381 P.3d 1241 (2016). Ms. Schreiner has not shown the trial court committed manifest constitutional error by treating her differently than Mr. Scoutten or by requiring her to sign for M.S.'s passport. *See* RAP 2.5(a)(3). And the trial court had an adequate basis for compelling Ms. Schreiner to facilitate finalization of M.S.'s passport, since Mr. Scoutten needed a valid passport to exercise his relocation rights under the court's order.

*Attorney fees on appeal*

Both parties seek attorney fees on appeal. Neither request is warranted. Ms. Schreiner has unsuccessfully represented herself on appeal. There is no basis for fees in such circumstances. With respect to Mr. Scoutten, his fee request is virtually a word-for-word recitation of the fee request made in the parties' prior appeal. This court's decision in that case (which was issued several months before Mr. Scoutten filed his current brief) held Mr. Scoutten's fee request was insufficiently detailed to warrant an award of fees. *See In re Marriage of Scoutten*, No. 50159-7-II, slip op. at 24 (Wash. Ct. App. Feb. 26,

17

No. 37358-4-III
*In re Marriage of Scoutten*

2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2050159-7-II%20Unpublished%20Opinion.pdf. Mr. Scoutten provides no reason for us to depart from our prior assessment of his briefing. Mr. Scoutten's request for fees must therefore be denied.

CONCLUSION

The orders on appeal are affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Siddoway, J.

18